UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ROBERT CLARK,                              )
                                           )
                  Plaintiff,               )
                                           )
          v.                               )      No. 1:20-cv-00414-JRS-MJD
                                           )
STEVE STALETS, et al.,                     )
                                           )
                                           )
                  Defendants.              )

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion to Dismiss Pursuant to Federal

Rules of Civil Procedure 37(b), 37(d) and 41(b) [Dkt. 22] and Plaintiff's response thereto [Dkt.

24].  On January 8, 2021, District Judge James R. Sweeney II designated the undersigned

Magistrate Judge to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

[Dkt. 26.]  For the reasons set forth below, the Magistrate Judge recommends that Defendants'

motion be **GRANTED**.

**I.  Background**

Plaintiff Robert Clark is proceeding pro se in this matter.  In his Complaint, Plaintiff

alleges that he was subjected to excessive force and unlawfully searched and arrested for

recording a police officer, Defendant Steve Stalets.  He asserts claims pursuant to 42 U.S.C. §

1983 for violation of his rights under the First and Fourth Amendments to the Constitution.

The amended scheduling order entered by the Court on July 10, 2020, required Plaintiff

to serve a settlement demand by July 30, 2020, and to serve his initial disclosures by July 31,

2020.  *See* [Dkt. 18].  Plaintiff failed to comply with both deadlines.  Plaintiff also failed to

respond to Defendants' document requests, which were served on April 1, 2020, and again on

July 12, 2020, after Plaintiff provided an updated address.

By letter postmarked August 11, 2020, Plaintiff reported that he was serving sixty days in

the Johnson County jail.  [Dkt. 20.]  He requested a "continuance" due to his incarceration and

the global pandemic and stated that he was attempting to find counsel to assist him with this

case.  He also enclosed his responses to Defendants' interrogatories.

Defense counsel reminded Plaintiff of his obligations under the scheduling order and his

obligation to respond to the outstanding document requests by letter dated September 30, 2020.

[Dkt. 22-1.]  Defendants filed a supplement to the instant motion on January 11, 2021, in which

they reported that Plaintiff still had not complied with his discovery obligations as of that date.

[Dkt. 27.]

Defendants attempted to depose Plaintiff on October 20, 2020.  After arriving thirty

minutes late, Plaintiff answered a few questions relating to his address, birthdate, and social

security number.  Things then quickly deteriorated.

Q:      And what's your educational background?

A:      What's that got to do with the issue at hand?

Q:      Well, we're here for a deposition, Mr. Clark.  I have a right to ask you some
        questions.  I have the magistrate's phone number—

A:      I don't want to answer that.

Q:      We can get the magistrate on the phone if we need to—

A:      We can wait until we get to the courtroom if you want to.

Q:      Well, we're here for a deposition today.  And so are you telling me that you're not
        going to answer questions about your educational background?

A:      I'm only going to answer questions if they pertain to this case.

Q:    And who's going to make that determination?

A:    I am.

Q:    And where did you get your law degree?

A:    I don't need a law degree.  My residence, my personal—my education has nothing to do with that cop assaulting me.  You take all the little notes you want.  I don't care.  Maybe when I leave here, how about I go to Channel 6?

Q:    Okay.  Where are you employed, Mr. Clark?

A:    I'm self-employed.

Q:    Where are you self-employed?

A:    Where?

Q:    Yes.

A:    With myself.

Q:    What do you do?

A:    I'm a metal finisher.  What's that got to do with why that cop assaulted me?

Q:    All right.  Mr. Clark, do I need to get the judge on the phone so we can –

A:    Yeah, you do.

Q:    All right.  Let's do it.

A:    Yeah, you do.  Yeah, you do.

Q:    I'm going to do it then.

A:    You're not going to sit here and ask me questions about my personal history that's got nothing to do with your boys assaulting me.

Q:    We'll see, won't we?  We'll talk to the judge.

A:      I'll let the judge—whatever the judge says, I'll go by.  You want to protect a couple scum bag cops that want to assault people that are already under arrest and in cuffs.  Yeah, okay. . . .  No recorder in here, no nothing.

Q:      There's a court reporter right there, Mr. Clark.

A:      I think we need to reschedule this because, No. 1, I'm not comfortable here without an attorney present.  No. 2, you're not going to ask me questions about my education.  It's got nothing to do with this case.

Q:      Well, let me just tell you the way this is going to work.  If you walk out of here today after you've been noticed to be here and shown up a half an hour late, I'm going to ask the judge to give me fees for my time today.

[Dkt. 22-3 at 3.]  At that point, counsel reached the undersigned's staff by phone.  While they were waiting for the undersigned to return the call, counsel attempted to proceed with questioning as follows:

Q:      Have you ever been convicted of a crime, Mr. Clark?

A:      Yeah.  You've got my record in front of you.  If you don't have it in front of you, you've got easy access to it.

Q:      What's the answer to that question, Mr. Clark, yes or—

A:      Yes.

Q:      All right.  Why don't you tell me what your criminal convictions are.

A:      I don't have a list in front of me.  What's my criminal convictions got to do with me filing a federal lawsuit against a couple of scum bag cops that want to assault me after I'm in handcuffs?

Q:      Okay.  You need to calm down, Mr. Clark.

A:      The only thing I need to do is stay white and die.

Q:      Okay.  Well, I'm not going to get talked to—

A:      You're not going to talk to me like I'm the dirt up under your feet, lady.  I don't care about your college education.  You understand that?

Q:     Okay.  You can either answer the questions and cooperate with the discovery process in the lawsuit that you filed, or I'm going to ask the judge to sanction you, and it may result in the dismissal of your case.  If you don't subject yourself to a deposition and cooperate—

A:     Hey, I've tried—I've tried this the legal way.  I can do it my way, by hook or by crook.  It makes me no difference.

Q:     What are you implying?  Are you threatening me?

A:     I'm not threatening you.  I wouldn't waste my time, lady.  You've done nothing to me.  I'm not threatening you.

Q:     I don't understand what you're saying, you can do it the legal way or by hook or by crook. I'm not sure what you're saying.

A:     I'm going to get mine.  Believe that.

Q:     Okay.  Do we need to take this deposition in front of the judge so that you'll—

A:     Yeah, we need to go in front of a judge.

Q:     Well, we're going to have the judge call us back.  And when I tell him—

A:     I want to be in an open courtroom with the people that assaulted me, so I can question them.

Q:     That's called a trial, and you'll have that.

A:     Oh, I intend to push for it.

Q:     Okay.  Well, meanwhile, this is the first step, and you need to cooperate in this step before you get to that.  Trial is a couple years down the road.  This is the beginning of—

A:     Don't talk to me like I'm one of your kids because I'm definitely not.

Q:     I'll tell you what, if my kids behaved the way you're behaving, we'd be having a serious conversation. So you can either cooperate, or you can—

A:     Just ask the questions.

Q:     I've been asking them, and I haven't been getting any answers from you.

A:     You ain't been getting the answers you want.

Q:      I want to know what your criminal convictions are both here and in Florida.

A:      Look them up.  You got a computer.  Look them up.

Q:      You are under oath, and you are required to cooperate.  What is your answer?

A:      I'll take the Fifth Amendment on that.  How's that?

Q:      Well, if you've already been convicted—I don't know what you think the Fifth Amendment is, but—

A:      It's the right to keep from self-incriminating me.  I don't have to answer that question.  You've got a law degree.

Q:      I'm aware I have a law degree.

A:      I do not have to answer that question under the Fifth Amendment.

Q:      Well, the Fifth Amendment is the right not to incriminate yourself.  If you've already been convicted, then you're already—

A:      I don't have to answer that question under the Fifth Amendment.  Thank you very much.

Q:      We're going to wait until the judge calls us back before I try to proceed with you. I'm not going to waste my time.

*Id.* at 4-5.

The Court returned the call a short time later and, during an on-the-record conversation,

the Court explained to Plaintiff:

Okay.  But it's your lawsuit, and she has the right to ask those questions.  You can only refuse to answer to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion pursuant to Rule 30(b)(3).  So the answer to those questions don't invoke a privilege.  There's no limitations on this deposition that have been ordered by the court.  So if you refuse to answer, you will either have to file a motion seeking to limit her deposition, which I can tell you will fail, or she's going to file a motion to compel you to answer the question, which will likely succeed.  And then you will have to be back here and answer those question and pay for the deposition . . . if it has to resume.  So you just need to calm down, answer the questions she asks you.

*Id.* at 5. The Court then answered Plaintiff's questions regarding how he could obtain discovery.

At the end of the call, the Court asked Plaintiff if he would answer counsel's questions, and

Plaintiff stated that he would do so. *Id.*; *see also* [Dkt. 21] (minute entry memorializing call).

Unfortunately, Plaintiff lasted only a few questions before he refused to answer a

question he deemed irrelevant. The following exchange them ensued:

Q:    Are we going to do this again, Mr. Clark? We just hung up from the
      judge.

A:    Why do you need to know my criminal history? What has that got to do
      with the God damn fact that that cop assaulted me?

Q:    All right. You need to stop yelling at me. You need to stop slamming
      your hand on the table.

A:    Don't point at me, Lady. I'm not one of your kids, okay?

Q:    Do I just need to get the judge on the phone? Or do I just need to move
      for sanctions for your behavior today because we're going to have to redo
      this again, and you're going to have to pay the costs?

A:    Oh, you act like your time is the only thing that costs money. Mine does,
      too.

Q:    Well, I wasn't a half an hour late. You were. Are you going to answer my
      question or not?

A:    What was the question?

Q:    What were you incarcerated for between 2003 and 2008?

A:    Burglary. What's that got to do with the fact that the cop assaulted me,
      huh? What's that got to do with that fact?

Q:    What else have you been incarcerated for?

A:    You got my criminal history. Look it up.

Q:    The judge is available all day. Are we going to call him back?

7

A:      Call him back.  I don't care.  Matter of fact, I'm done.  You can get a
        judgment.  I don't care.  We're going to trial.  We're going to trial.  Matter
        of fact . . . .  [Transcript indicates counsel began using the phone.]  So ask
        some more questions.  You have got somebody coming in here at 11:00.

Q:      Well, if he's on time, unlike you, he'll be here at 11:30.  And I've been
        trying to ask questions, Mr. Clark, and you are refusing to answer them.
        My questions are:  When have you been convicted of a crime?

A:      What has that—

Q:      I'm not going to answer your question, Mr. Clark.

A:      Then I'm not going to answer yours.

Q:      Well, apparently, you didn't understand what the judge told you.

A:      Apparently, I don't give a shit.

Q:      All right.  Well, I'm done with you, Mr. Clark.  You—

A:      Good.  You done?  I'm done, too.  I'm done, too.

Q:      I'll be filing my motions for your noncooperation.

A:      I don't care, lady.  Your time ain't worth no more than mine is.  Have a
        nice day, and I hope you choke.

*Id.* at 7.

## II.  Discussion

Defendants move to dismiss this case pursuant to Federal Rule of Civil Procedure 37 as a

sanction for Plaintiff's failure to comply with his discovery obligations.[1]  "A district court may

---

[1] Defendants also cite to Federal Rule of Civil Procedure 41(b) as a basis for dismissal.  Because
the Court finds dismissal appropriate pursuant to Rule 37, it need not decide whether dismissal
also would be appropriate under Rule 41(b).  However, the Court notes that the Seventh Circuit
has "repeatedly held that a district court ordinarily may not dismiss a case for want of
prosecution without first providing an explicit warning to the plaintiff," *Gabriel v. Hamlin*, 514
F.3d 734, 737 (7th Cir. 2008) (citations omitted), and Defendants do not point to such an explicit
warning or advance any argument why dismissal under Rule 41(b) without such a warning would

dismiss a case as a sanction for discovery abuse upon finding that the plaintiff, through its

actions, displayed willfulness, bad faith, or fault." *In re Pansier*, 417 F. App'x 565, 569 (7th Cir.

2011) (citing *Collins v. Illinois*, 554 F.3d 693, 696 (7th Cir. 2009)).  The choice of appropriate

sanction in the case of a discovery violation is within the sound discretion of the Court; the Court

need not "select the least severe sanction," but rather may choose any sanction that "a reasonable

jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction."

*In re Golant*, 239 F.3d 931, 937 (7th Cir. 2001) (citations omitted).

Given Plaintiff's behavior in this case, the Court easily finds that dismissal of his case is

the appropriate sanction.  As the transcript quoted above demonstrates, Plaintiff began behaving

in a belligerent manner almost immediately after his deposition began.  Even if he originally

believed in good faith that counsel's questions were improper, the undersigned unequivocally

explained to him that they were not.  Instead of calming down and answering counsel's questions

as instructed, however, Plaintiff became even more aggressive and obstructionist.  It is clear and

undeniable that Plaintiff had no intention of cooperating with defense counsel at his deposition;

indeed, he admitted on the record that he did not care what the undersigned's instructions had

been and did not intend to comply with them.

---

be appropriate in this case.  That said, the Court notes that defense counsel did, in fact, warn
Plaintiff during the deposition that if he continued to refuse to cooperate she was "going to ask
the judge to sanction you, and it may result in the dismissal of your case," [Dkt. 22-3 at 3], and
there is authority that suggests that that warning might have been sufficient.  *See Fischer v.
Cingular Wireless, LLC*, 446 F.3d 663, 666 (7th Cir. 2006) ("The purpose of requiring a warning
is not to entrap district judges but to make sure that the plaintiff is warned.  The warning need
not (despite a contrary suggestion in *Kruger v. Apfel*, [214 F.3d 784, 788 (7th Cir. 2000)])
always come from the judge.").

Plaintiff's behavior at his deposition is exactly the type of willful, bad faith refusal to participate in the discovery process that merits the sanction of dismissal. Indeed, the Seventh Circuit has at least twice affirmed dismissal for pro se litigants' failure to cooperate in their depositions in cases involving arguably less obdurate behavior than that present here. *See Collins,* 554 F.3d 693 (affirming sanction of dismissal imposed after pro se plaintiff refused to be deposed in presence of defendants and left before court could be called to resolve dispute); *Gillard v. Bd. of Trustees of Cmty. Coll. Dist. No. 508,* 393 F. App'x 399 (7th Cir. 2010) (affirming sanction of dismissal after pro se plaintiff refused to be deposed unless given a written list of questions as a disability accommodation and refused to wait for counsel to call the court, and finding plaintiff's behavior "indistinguishable" from that in *Collins*). Dismissal was the appropriate sanction in those cases; it is the appropriate sanction in this case as well.

### III.  Conclusion

For the reasons set forth above, the Magistrate Judge **RECOMMENDS** that Defendants' motion to dismiss [Dkt. 22] be **GRANTED** and that this case be **DISMISSED WITH PREJUDICE**.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO ORDERED.

Dated:  29 JAN 2021

_____

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution by United States Mail to:

Robert Clark
602 E. Thompson Rd.
Indianapolis, IN  46227-1629


Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.